UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JOEY CROOK, et al., | CIVIL ACTION NO. 5:21-321-KKC |
|     Plaintiffs, | |
| V. | **OPINION AND ORDER** |
| PJ OPERATIONS, LLC, d/b/a Papa John's Pizza. <br> TOM WYLIE, and <br> DAVID ALLEN | |
|     Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the plaintiff's motion for conditional certification (DE 51) of a collection action under the Fair Labor Standards Act. For the following reasons, the Court will grant the motion in part and deny it in part.

**I. Facts**

Defendants (together, "PJ Operations") operate numerous Papa John's Pizza franchise stores that employ drivers who use their own vehicles to deliver pizza and other food items to customers. Plaintiff Joey Crook was a delivery driver for PJ Operations. He asserts that PJ Operations failed to pay him the minimum wage of $7.25 per hour in violation of the Fair Labor Standards Act. *See* 29 U.S.C. § 206(a).

"The FLSA mandates that '[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce' a statutory minimum hourly wage." *In re: Amazon.Com, Inc. Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 905 F.3d 387, 405 (6th Cir. 2018) (quoting *Stein v. HHGREGG,*

*Inc.*, 873 F.3d 523, 530 (6th Cir. 2017)). The federal minimum wage is $7.25 per hour and has been since 2009. 29 U.S.C. § 206)(a)(1)(c).

Crook asserts that Defendants require that delivery drivers use their own automobiles to deliver food to customers. He asserts that Defendants used a "flawed" method to reimburse drivers for the expenses the drivers incur in using their automobiles for delivery. According to Crook, the reimbursement method used by Defendants does not reimburse the drivers for their actual expenses or even a reasonable approximation of their expenses. Crook alleges that drivers are under-reimbursed to such an extent that their wages fall below the federal minimum wage during all workweeks. (DE 26, Amended Complaint, ¶ 1.) Crook brings the action as a collective action under the FLSA, seeking to recover the past wages and overtime hours Crook asserts that the Defendants owe him and other similarly situated drivers.

With this motion, Crook requests that the Court authorize notice of this action to all current and former delivery drivers employed by Defendants for the three years preceding the date of this order. (DE 55, Reply at 10.)

II. Analysis

   A. Proper potential opt-in plaintiffs

The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of . . . themselves and other employees similarly situated." *Id*. § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id*. "Thus – assuming they are 'similarly situated' – other employees become parties to an FLSA suit only if they affirmatively choose to do so." *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023).

2

Courts have an "implied judicial power, in appropriate cases to facilitate notice of FLSA suits to potential plaintiffs." *Id.* at 1009 (quoting *Hofmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989) (quotations omitted). Upon receipt of the notice, "all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action." *Id.* (citation omitted.)

In this way, "class actions under Rule 23 'are fundamentally different from collective actions under the FLSA.'" *Id.* at 1009 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013)). An FLSA collective action is not representative. *Id.* "Similarly situated employees who join an FLSA action become parties with the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Id.* (quotations and citation omitted). "Under Rule 23, the district court certifies the action itself as a class action; whereas in an FLSA action, under § 216(b), the district court simply adds parties to the suit." *Id.*

The Court undertakes a two-step process for issuing notice and allowing employees to join an FLSA action. At the first step, plaintiffs must "show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id.* at 1011. "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.* The standard is designed to "confine the issuance of court-approved notice, to the extent practicable, to employees who are in fact similarly situated." *Id.* However, notice need not await a "conclusive finding of 'similar situations.'" *Id.* (quoting *Sperling v. Hoffman-La Roche*, 118 F.R. D. 392, 406 (D.N. J. 1988)).

Later, at step two, the Court determines whether other employees are "'actually' similarly situated to the original plaintiffs." Id. at 1010. It is only after the Court conclusively determines the named plaintiffs are similarly situated to any opt-ins, that the opt-ins become parties to the suit. *Id.* at 1009 (citations omitted). *See also McElwee v. Bryan Cowdery, Inc.*,

3

No. 2:21-CV-1265, 2023 WL 4423880, at *11 (S.D. Ohio July 10, 2023); *Berner v. PharMerica Logistics Servs., LLC*, No. 3:23-CV-142-CRS, 2023 WL 8242468, at *2 (W.D. Ky. Nov. 28, 2023); *Guy v. Absopure Water Co.*, LLC, No. 20-12734, 2023 WL 5953225, at *2 (E.D. Mich. Sept. 12, 2023); *McCall v. Soft-Lite L.L.C.*, No. 5:22-CV-816, 2023 WL 4904023, at *5 (N.D. Ohio Aug. 1, 2023).

Here, there is no dispute that Crook and the potential opt-in plaintiffs were all non-exempt hourly workers; all performed the same job duty of delivering food to Defendants' customers using their personal vehicles; and all were subject to the Defendants' company-wide mileage reimbursement policy at issue. In response to Crook's motion, Defendants do not object to notice of this action being sent to all current and former delivery drivers who worked for Defendants during the last three years, but with some exceptions. Defendants argue notice should not be sent to former delivery drivers who are already parties to a similar litigation against the same defendants in the district court of Idaho: *Edwards, et al. v. PJ Ops Idaho, LLC, et al.*, Case. No. 1:17-283 (D. Id. Filed July 5, 2017). Defendants ask that the Court rule that Crook cannot provide notice of this FLSA action to 1) the FLSA opt-in plaintiffs in *Edwards* or 2) members of the state-law class actions in *Edwards*. (DE 53, Response at 5, 7.)

In *Edwards*, the plaintiffs are also delivery drivers. They assert claims against the same defendants that are named in this action. Like Crook, the plaintiffs in *Edwards* also assert claims under the FLSA for failure to pay minimum wage and overtime wages, which they allege was caused by the company-wide policy that resulted in under-reimbursements for vehicle expenses. The parties here agree that the allegations in this case and *Edwards* are essentially the same.

4

In *Edwards*, the court ordered that notice of the FLSA action be delivered to "all current and former delivery drivers employed by Defendant within the three years preceding the date of this Order." (De 53-2, Idaho Order.) The order was dated May 15, 2018. Thus, the order approved notice being sent to all current and former delivery drivers employed by the defendant from May 15, 2015 to May 15, 2018. Unlike this action, in *Edwards*, the plaintiffs also asserted claims based on state wage statutes. About four years after the order approving notice of the FLSA action being sent to potential opt-in plaintiffs, the *Edwards* court certified five classes of individuals pursuing the state law claims (Idaho, Colorado, Kentucky, New York, and North Dakota). (DE 225 in *Edwards*, No. 1:17-283 (D. Id.)

Section 216(b) of the FLSA states that "[n]o employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). "Based on this language, courts have found that employees must affirmatively opt-in to the case in order to be bound by a judgment in FLSA collective actions. Employees who do not opt-in are not similarly bound by the results of the litigation, including any settlement." *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 124 (D. Colo. 2016). Employees who do not opt into an FLSA action are not bound by the judgment and may bring their own private action. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1062 (N.D. Cal. 2007).

In his reply brief, Crook agrees that "anyone who is already a member of the FLSA collective in *Edwards* should not receive notice here." (DE 55, Reply at 2.) He argues, however, that at least certain individuals who are members of only the state law class actions (and not parties to the FLSA action) in *Edwards* should receive notice of this FLSA action and be given the opportunity to opt into it..

5

Defendants, on the other hand, argue that allowing the members of the state law class actions in *Edwards* to opt into this action would result in "claim splitting."  The doctrine of claim-splitting stems from the "Supreme Court's instruction in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation." *Waad v. Farmers Ins. Exch*., 762 F. App'x 256, 260 (6th Cir. 2019). The doctrine "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit. By spreading claims around in multiple lawsuits in other courts or before other judges, parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'" *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011)

Claim-splitting is a variation of res judicata. *Waad*, 762 F. App'x at 260. "Res judicata – more specifically here, claim preclusion – bars subsequent litigation of causes of action where a court has already issued a final decision on the merits in an earlier case and the causes of action were, or should have been, litigated in the earlier case between the same parties." *Waad.*, 762 F. App'x at  260. There is a four-part test for determining whether res judicata bars a subsequent action: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (citation omitted). One difference between the doctrine of claim splitting and res judicata, however, is that claim splitting does not require a final decision by the first court. "[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Waad*, 762 F. App'x at 260 (citation omitted). "Essentially, claim

6

splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment. *Id*. "The proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis." *Id*. (citations omitted).

The Sixth Circuit has stated, however, that "a class action, 'of course, is one of the recognized exceptions to the rule against claim-splitting.'" *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 429 n.16 (6th Cir. 2012) (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir.2003)). This is at least true where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action . . . and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief. . . ." Restatement (Second) of Judgments § 26(1)(c). In other words, the doctrine of claim-splitting "does not apply to matters that could not be advanced in a prior action. . . ." *Gooch*, 672 F.3d at 409 (quoting 18A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 4455).

Crook, points out that not all members of the *Edwards* state law classes had the option of joining in the FLSA claim in that action. This is because the potential plaintiffs notified of the FLSA claim in the *Edwards* were only those delivery drivers who worked for Defendants from May 15, 2015 to May 15, 2018. The state classes, on the other hand, included individuals who worked for the Defendants after May 15, 2018. Thus, members of the state-law classes who worked for Defendants after May 15, 2018 did not receive notification of the FLSA claim in *Edwards*.

Accordingly, the Court will order that notice of this FLSA action be sent to "all current and former delivery drivers employed by Defendants within the three years preceding the date of this Order *with the following exceptions*: 1) any members of the Rule 23 classes in *Edwards, et al. v. PJ Ops Idaho, LLC, et al.*, Case. No. 1:17-283 (D. Id.) who worked for

7

Defendants on or before May 15, 2018 (and therefore, were notified of the FLSA claim in that action); and 2) any individuals who were parties to the FLSA action in the *Edwards* case.

### B. Proposed Form and Method of Notice

Defendants also object to Crook's proposed notice and the proposed method of distributing it.

Crook proposes distributing his proposed notice and consent forms via First Class Mail, e-mail, and text messages and posting the notices at each of Defendant's Papa Johns' locations. Crook also requests that the Court authorize follow-up reminders to those who have not opted into the case 30 days after the initial notice is sent.

Defendants do not object to notices being sent via First Class Mail or to posting the notices at Papa John's location. Defendants argue that sending notice via e-mail and text in addition to regular mail and postings at Papa John's, however, "is intrusive, involves advocacy, will create confusion, and violates the requirements of judicial neutrality." (DE 53, Response at 10.)

"In FLSA cases, first-class mail is generally considered to be the best notice practicable to ensure that proper notice is received by potential class members." *Lindberg v. UHS of Lakeside*, LLC, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011) (internal quotations and citation omitted). Here, however, the notice will be sent to individuals who worked for Defendants the last three years, and many of the potential plaintiffs may have moved physical addresses. Thus, the Court will also authorize notice via e-mail. Even when individuals move from one physical address to another, they generally retain their e-mail addresses.

The Court will not, however, authorize text messages at this point. The Court has no basis to find that e-mail, first-class mail, and postings at Papa John's locations will be insufficient to reach potential opt-in plaintiffs. Moreover, the Court is concerned that "some individuals have

limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges." *Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018). Further, individuals likely view unsolicited text messages as more annoying and intrusive than the other three proposed methods of distributing the notice. Crook may raise this issue again if he is unsuccessful in notifying potential opt-in plaintiffs by the other three methods.

Crook also asks the Court to authorize reminder notices to potential opt-in plaintiffs who do not opt into this action. "Many courts have rejected reminder notices, recognizing the narrow line that divides advising potential opt-in plaintiffs of the existence of the lawsuit and encouraging participation." *Wolfram v. PHH Corp.*, No. 1:12-CV-599, 2012 WL 6676778, at *4 (S.D. Ohio Dec. 21, 2012). With notices being delivered by three different methods, the Court sees no need for follow-up reminders at this point, and the Court agrees that reminder notices might suggest that the Court encourages joinder in this action.

The e-mails distributing the notice should include a link to the FLSA notice. As to the text of the e-mail, the Court will direct the parties to meet and confer to develop a "concise and easily read and understood statement" to be included in the e-mail. *Pryke v. First Solar, Inc.,* No. 3:21-CV-00681-JGC, 2021 WL 5027565, at *4 (N.D. Ohio Oct. 29, 2021).

As to the content of the notice itself, Defendants object that it "strongly suggests" that employees who want to participate in the action must be represented by Plaintiff's counsel and also that it improperly encourages recipients to join the lawsuit by including the case caption at the top.

As to whether the notice suggests that recipients who want to opt into this action must be represented by Crook's counsel, the proposed notice states, "If you wish to join this case with an attorney other than Plaintiff's attorney you may do so." However, the only method that the notice

9

sets forth for joining the lawsuit requires that the notice recipients to agree that Crook's counsel will represent them. The recipient is instructed that he or she may join the lawsuit by sending the completed consent form to Crook's counsel, and the consent form requires that the potential plaintiff agree to being represented by Crook's counsel. Crook states that he is willing to confer with Defendants regarding language that would make it clear that the notice recipients can hire their own counsel at their own cost or that they can proceed pro se. Accordingly, the Court will order the parties to meet and confer regarding this language and regarding language on how the recipients can join the lawsuit with their own counsel or proceeding pro se.

As to the objection to including the case caption at the top of the notice, multiple courts have rejected the argument that including the case caption improperly conveys judicial endorsement of the plaintiff's position or encourages recipients to join the lawsuit. *See, e.g., Colley v. Scherzinger Corp.*, 176 F. Supp. 3d 730, 735 (S.D. Ohio 2016); *Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-CV-01099, 2020 WL 6459641, at *19 (M.D. Tenn. Nov. 3, 2020); *Bradford v. Team Pizza, Inc.*, No. 1:20-CV-60, 2020 WL 3496150, at *7 (S.D. Ohio June 29, 2020), report and recommendation adopted, No. 1:20-CV-00060, 2020 WL 5987840 (S.D. Ohio Oct. 9, 2020). The Court agrees with these courts. Further, to the extent that the use of the caption carries with it any connotation that the Court endorses the action, the proposed notice contains the following statement in all capital letters:

> THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT . . . THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR OF THE DEFENDANT'S DEFENSES.

And the notice later states, "The Court has not yet decided whether Defendatns have done anything wrong or whether this case will proceed to trial." Crook states he has no objection to

moving the statement that the Court has not endorsed the merits of the action to directly below the caption and in bold font. The Court will order that he do so (and that he correct the name of the U.S. District Judge in the statement). This will also help alleviate any possible implication that the Court endorses the plaintiff's position.

### C. Defendants' Production of Information regarding Potential Opt-in Plaintiffs

Crook asks that the Court order Defendants to produce the last four digits of each potential opt-in plaintiffs' social security number if the mailed notice is returned as undeliverable. Crook asserts this information is needed to obtain the current contact information for each potential opt-in plaintiff. Defendants do not object to this request, and the Court finds it reasonable.

Crook also requests that the Court order Defendants to provide the names, last known mailing addresses, all known e-mail addresses, phone numbers, dates of birth, driver's license numbers, and dates of employment for all potential opt-in Plaintiffs. Defendants object to producing the dates of employment and telephone numbers, arguing that the information is irrelevant to notice.

The telephone numbers are not necessary since the Court has ordered notice via only U.S. mail and e-mail at this point. Crook agrees to withdraw his request for the dates of employment for purposes of the notice process. As to the dates of birth and driver's license numbers, Defendants do not object to producing this information and it would likely assist in locating potential opt-in plaintiffs if mail is returned. Accordingly, the Court will order Defendants to produce this information.

### III. Conclusion

For all these reasons, the Court hereby ORDERS that Plaintiff's Motion (DE 51) for FLSA Conditional Certification and Notice to Putative Class Members is GRANTED in part and DENIED in part as follows:

1) The Court authorizes Crook to deliver notice of this FLSA action to the following group of potential opt-in plaintiffs:

   All current and former delivery drivers employed by Defendants within the three years preceding the date of this Order *with the following exceptions*: 1) any members of the Rule 23 classes in *Edwards, et al. v. PJ Ops Idaho, LLC, et al.*, Case. No. 1:17-283 (D. Id.) who worked for Defendants on or before May 15, 2018; and 2) any individuals who were parties to the FLSA action in the *Edwards* case.

2) within 30 days of the entry date of this order, Plaintiff's counsel SHALL send notice to each of the potential opt-in plaintiffs;

3) Crook SHALL deliver the notice to potential opt-in plaintiffs via First Class Mail and e-mail and may hire a third-party administration company to assist in the notice process at the plaintiffs' expense;

4) Defendants shall post the notice in plain view at all Papa John's locations;

5) Crook SHALL PLACE the following statement in bold immediately below the case caption in the notice:

   > THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF KENTUCKY, U.S. DISTRICT JUDGE KAREN K. CALDWELL. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR OF THE DEFENDANT'S DEFENSES.

6) The parties SHALL MEET AND CONFER within 14 days of the entry date of this order regarding:

    a. The text of the e-mail sent to potential plaintiffs containing the link to the FLSA notice; because the e-mail will link to the notice, the text of the e-mail should be succinct;

    b. details about the intake and filing of opt-in forms with the Court, or the submission of reports after the opt-in period; and

    c. language to include in the notice clarifying that notice recipients may hire their own counsel at their own cost or that they may proceed pro se and language providing instructions as to how the recipients can join the lawsuit with their own counsel or proceed pro se;

7) With the revisions discussed in this Opinion and Order, the Court APRROVES the form and content of Plaintiff's proposed notice and consent forms;

8) Within 14 days of the entry date of this order, Defendants SHALL PRODUCE to Plaintiff's counsel the names, last-known mailing addresses and e-mail addresses, last four digits of the social security number, dates of birth, and driver's license numbers of all potential opt-in plaintiffs;

9) The Court authorizes the potential opt-in plaintiffs to execute their consent forms electronically; and

10) The Court authorizes a 60-day period for the potential opt-in plaintiffs to join the case.

This 11th day of March, 2024.



KAREN K. CALDWELL  
UNITED STATES DISTRICT JUDGE  
EASTERN DISTRICT OF KENTUCKY